UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IDALIA GUERRERO,

                Plaintiff,

v.

THOMAS DECKER, *in his official capacity as New York Field Officer Director for U.S. Immigration and Customs Enforcement*; KEVIN MCALEENAN, *in his official capacity as Acting Secretary of the U.S. Department of Homeland Security*; ATTORNEY GENERAL WILLIAM BARR, *in his official capacity as Attorney General of the United States*; and U.S. DEPARTMENT OF HOMELAND SECURITY,

                Defendants.

No. 19-CV-8092 (RA)

OPINION & ORDER

---

RONNIE ABRAMS, United States District Judge:

      Petitioner Idalia Guerrero is a citizen of El Salvador, who fled there fifteen years ago and has since resided in the United States with her husband and four children. On June 18, 2018, Guerrero was arrested and detained by U.S. Immigration and Customs Enforcement ("ICE"). The Department of Homeland Security ("DHS") then charged Guerrero as removable as a noncitizen present in the United States without being admitted or paroled. *See* 8 U.S.C. § 1182(a)(6)(A)(i). In light of a conviction Guerrero had sustained for reckless endangerment and endangering the welfare of a child, DHS determined Guerrero was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c) and has detained her for the past sixteen months. Although Guerrero was granted asylum in June 2019, she has remained detained during the pendency of DHS's appeal to the Board of Immigration Appeals ("BIA").

Guerrero argues that she has been subject to unreasonably prolonged detention and is entitled to immediate release unless provided a "constitutionally sufficient bond hearing." Pet. ¶ 2. This argument is now a familiar one before courts in this district. Guerrero's petition, however, presents a factual scenario distinct from many of the other cases before this court: although detained for a lengthy period under § 1226(c), she has twice received a bond hearing – including after being granted asylum. For the foregoing reasons, the Court holds that Guerrero's detention has comported to date with due process.

## BACKGROUND

Guerrero is a citizen of El Salvador. Born there in 1981, Guerrero was raped as a teenager and became pregnant as a result. *Id.* ¶ 10. Her rapist subsequently stalked and threatened her, and, several years later, the man's brother shot and injured Guerrero's husband. *Id.* ¶ 10-11. As a result, Guerrero and her husband moved to a different town within El Salvador. *Id.* ¶ 11. However, in 2003, Guerrero encountered her rapist, who again began to stalk her. *Id.* A year later, she and her husband "fle[d] rape, violence, and death threats" in El Salvador, and unlawfully entered the United States. *Id.* ¶ 9; Pujol Decl. ¶ 4. Since 2004, Guerrero has lived in New York with her husband, four children, and U.S. citizen grandson. Pet. ¶ 14. Other family members, including her mother and sister, also live in the United States. *Id.*

On January 7, 2018, Guerrero was arrested for driving under the influence with her fourteen-year old son in the car. *Id.* ¶ 15. Guerrero was charged, in addition to other related violations, with an aggravated DWI with a child present and a blood alcohol level of .18, reckless endangerment in the second degree, and endangering the welfare of a child. Gov't Ex. 1. She pled guilty and was sentenced to eight months imprisonment on June 4. Gov't Ex. 1. Receiving credit for the six months that she already served and 80 days of good time credit,

2

Guerrero completed her sentence on June 15, 2018. *Id.*

Upon finishing her criminal sentence, Guerrero was transferred to ICE custody. Pet. ¶ 16. On June 18, 2018, DHS commenced removal proceedings against Guerrero by serving her with a Notice to Appear ("NTA"), which charged her as removable pursuant to § 212(a)(6)(A)(i) of the Immigration and Nationality Act for having been present in the United States without being admitted or paroled. Gov't Ex. 2 (NTA). She was also served with a Notice of Custody Determination, which stated she would be detained pending the outcome of her proceedings. Gov't Ex. 3 (Notice of Custody). Guerrero was initially transferred to the Hudson County Correctional Facility in New Jersey, and then to Bergen County Jail in December 2018, where she has remained ever since. Gov't Opp. at 3.

On September 12, 2018, Guerrero obtained *pro bono* legal representation and first appeared before an immigration judge. Pet. ¶ 17. Guerrero's counsel requested a continuance to prepare the case and a bond hearing. At the next hearing on October 10, Guerrero challenged DHS's grounds for removing her, filing a motion to terminate proceedings for insufficient evidence regarding her alienage. *Id.* ¶ 18. The immigration judge denied her motion. Guerrero also filed an application for relief on several grounds, including asylum. *Id.* A hearing on the merits of that application was scheduled for December 31. With respect to bond, the immigration judge postponed argument to have the Government explain in writing why Guerrero was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c). *See* Gov't Ex. 5 (DHS Memo on Mandatory Detention).

On October 25, the parties returned before the immigration judge to address Guerrero's bond request. Pet. ¶ 27. The judge denied her request on two grounds. *See* Gov't Ex. 6. First, the judge determined that the court lacked jurisdiction to grant bond because Guerrero was

3

subject to mandatory detention under § 1226(c) as a result of her conviction for reckless endangerment and endangering the welfare of a child. Pet. ⁋ 27; Gov't Opp. at 5. Second and in the alternative, the judge found that Guerrero did not meet her burden of demonstrating that she was not a danger to the community. *Id.* Guerrero did not appeal the judge's denial of bond to the BIA. Pujol Decl. ⁋ 13.

A hearing on the merits of Guerrero's application for relief began on December 31.[1] In addition to presenting substantial documentary evidence, Guerrero and her husband testified about her fear of returning to El Salvador. With insufficient time for Guerrero to present the rest of her case, however, the judge adjourned the hearing until January 15, 2019. On that day, an expert on El Salvador's country conditions testified on direct, but once again the court ran out of time to hear Guerrero's case and continued the hearing until May 23, 2019. A week prior to the May hearing, the parties agreed to stipulate that the remaining expert and witness testimony would be consistent with their written statements. Pet. ⁋ 22; Gov't Opp. at 6. The immigration judge thus scheduled a hearing on June 26 to issue a decision. Pet. ⁋ 22.

On June 26, the immigration judge granted Guerrero asylum as a matter of discretion. Pet. Ex. 1.[2] The judge determined that Guerrero established a well-founded fear of persecution if returned to El Salvador on two grounds: (1) her kinship to her daughter, who had cooperated with police regarding MS-13 gang members, and (2) her status as a landowner. *Id.* at 8-10. The judge considered that Guerrero had a conviction for "endangering the welfare of a child, after she drank and drove with her fourteen-year-old son in the car and was involved in an accident which she fled," noting that she "strongly disapproved of such horribly dangerous behavior." *Id.* at 12.

---

[1] Prior to this date, Guerrero's husband applied for a U-Visa. According to the petition, "[i]f her husband is granted a U visa, [Guerrero] could also be granted a derivative U visa, allowing her to remain in the United States and eventually adjust her status to become a Lawful Permanent Resident." Pet. ⁋ 20. That application remains pending. *Id.*

[2] The immigration judge's opinion is incorrectly dated July 26.

4

Nonetheless, the judge held that asylum was warranted because Guerrero "set forth sufficient evidence to show that she was remorseful for her behavior and that she was genuinely rehabilitated" and "has strong family and community ties and is a mother of four." *Id.* Guerrero appealed the decision on July 25, Gov't Ex. 8, and DHS appealed one day later, Gov't Ex. 9. Pet. ¶ 25; Gov't Opp. at 6.[3]

On July 31, Guerrero requested a second bond hearing, arguing that "any prior finding of dangerousness must be reconsidered" due to the discretionary grant of asylum. Pet. ¶ 28. Citing her limited criminal history, she also contested DHS's assertion that she was subject to mandatory detention pursuant to § 1226(c). On August 29, a hearing was held, and again her bond request was denied because the court found that Guerrero had failed to demonstrate she was not a danger to the community and, in the alternative, because the court lacked jurisdiction to grant bond when she was detained pursuant to § 1226(c). *Id.* ¶ 29; Gov't Ex. 11 (IJ order citing "danger and in [the] alternative, mandating detention" as the reasons for denying bond). As of this petition's filing, Guerrero had not appealed that decision to the BIA.

Guerrero filed this habeas petition against DHS and various affiliated individuals in their official capacities on August 29, 2019. Guerrero asks this Court to order the Government to provide her with a "constitutionally adequate" bond hearing or release her. Pet. ¶ 60. On September 18, Respondents filed an opposition to the Petition.

## DISCUSSION

### I.   Mandatory Detention Pursuant to § 1226(c)

---

[3] Guerrero appealed the immigration judge's finding that she lacked the requisite well-founded fear of persecution based on several other asserted grounds, including that she was a Salvadoran woman, a young Salvadoran woman, and a feminist. Pet. Ex. 1 at 9-10; Gov't Ex. 8 (Guerrero's Notice of Appeal, stating that she "appeals on these issues"). Guerrero asserts that she appealed the decision, although it was in her favor, "in an attempt to preserve the status quo." Pet.'s Reply at 2 n.1.

5

Generally speaking, noncitizens arrested and subject to removal may request release on bond during the pendency of their proceedings. *See* 8 U.S.C. § 1226(a). "Congress," however, "adopted a special rule for aliens who have committed certain dangerous crimes," requiring that they "be detained without a bond hearing until the question of their removal is resolved."[4] *Nielson v. Preap*, 139 S. Ct. 954, 959 (2019) (discussing § 1226(c)). In 2003, the Supreme Court upheld the constitutionality of § 1226(c)'s requirement of mandatory detention during the pendency of removal proceedings without a bond hearing. *See Demore v. Kim*, 538 U.S. 510 (2003). Mandatory detention for a brief period, the Court said, was not a due process violation because "Congress [was] justifiably concerned that deportable criminal aliens who are not detained continue to engage in crime and fail to appear for their removal hearings in large numbers." *Id.* at 513.

Following *Demore*, several circuits, including the Second Circuit, have recognized that indefinite detention under § 1226(c) "without being afforded a bond hearing would violate [a noncitizen's] right to due process." *Lora v. Shanahan*, 804 F.3d 601, 613 (2d Cir. 2015). "[I]n order to avoid serious constitutional concerns," the Circuit in *Lora* held that "section 1226(c) must be read as including an implicit temporal limitation" and thus mandated that a noncitizen "be afforded a bail hearing before an immigration judge within six months of his or her detention." *Id.* at 614 (reasoning that "there must be some procedural safeguard in place for immigrants detained for months without a hearing"); *see also Rodriguez v. Robbins*, 804 F.3d 1060, 1090 (9th Cir. 2015) (holding that, for noncitizens mandatorily detained under § 1226(c),

---

[4] There is only one exception to mandatory detention provided in § 1226(c): if the Attorney General determines it "necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation." *Id.* § 1226(c)(2); *see Preap*, 139 S. Ct. at 959 (describing this as a "narrow exception"). Guerrero does not argue that this exception applies to her.

6

"IJs must consider the length of detention and provide bond hearings every six months"). In 2018, the Supreme Court rejected this conclusion. *See Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Reversing the Second and Ninth Circuits, the *Jennings* Court stated that "§ 1226(c) does not on its face limit the length of the detention it authorizes." *Id.* at 846-47. Rather, it "mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.*

*Jennings*, however, only addressed what limits were imposed on detention under § 1226(c) as a statutory matter, leaving open whether due process concerns might otherwise limit § 1226(c)'s scope. *See id.* at 851 (noting that "the Court of Appeals . . . had no occasion to consider respondents' constitutional arguments on their merits" and "remand[ing] the case to the Court of Appeals to consider [these arguments] in the first instance"); *Sajous v. Decker*, No. 18-CV-2447 (AJN), 2018 WL 2357266, at *2 (S.D.N.Y. May 23, 2018) ("The majority opinion in *Jennings* took no position on this constitutional analysis."). Since *Jennings*, the Second Circuit has not yet revisited the issue. But courts in this district, including this one, have had several opportunities to opine on it, and have agreed that "prolonged detention under § 1226(c) without providing an alien with a bond hearing will – at some point – violate the right to due process." *Sajous*, 2018 WL 2357266, at *8. To determine at what point detention without review becomes constitutionally suspect calls for "an as-applied, fact-based analysis." *Id.* at *9; *Joseph v. Decker*, No. 18-CV-2640 (RA), 2018 WL 6075067, at *10 (S.D.N.Y. Nov. 21, 2018) ("Courts in this district have distilled from the relevant case law several factors for assessing when detention in the absence of a bond hearing violates procedural due process."). Courts have utilized several factors to guide this analysis, including: "(1) the length of time the alien has been detained; (2) whether the alien is responsible for the delay; (3) whether the alien has asserted defenses to

removal; (4) whether the alien's civil immigration detention exceeds the time the alien spent in prison for the crime that rendered him removable; and (5) whether the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention." *Joseph*, 2018 WL 6075067, at *10.

## II.    Guerrero's Habeas Petition

Guerrero does not contest that she is subject to mandatory detention under § 1226(c). *See* Pet. ¶ 42-50. Rather, she argues that she has been unreasonably detained for a prolonged period without a "constitutionally sufficient" bond hearing and, as such, her due process rights have been violated. *Id.* ¶ 43.

Guerrero's argument relies heavily on the recent case law from this district imposing a constitutional limit on § 1226(c) detention. *See id.* ¶ 42. Her circumstances are factually distinct, however, and do not raise the same due process concerns addressed in the cases decided in the aftermath of *Jennings*. While those courts held that detention pursuant to § 1226(c) resulted in a due process violation, the decisions did not hinge solely on the length of time the noncitizen was detained but on the length of time in which he or she was denied a bond hearing. *See Cabral v. Decker*, 331 F. Supp. 255, 260 (S.D.N.Y. 2018) (focusing on whether "individual detentions without bond hearings might be so lengthy as to violate due process"); *see, e.g., Arce-Ipanaque v. Decker*, No. 19-CV-1076 (JMF), 2019 WL 2136727, at *1 (S.D.N.Y. May, 15, 2019) (noncitizen detained without a bond hearing for eighteen months); *Gomes Herbert v. Decker*, No. 19-CV-760 (JPO), 2019 WL 1434272, at *1-2 (S.D.N.Y. Apr. 1, 2019) (noncitizen detained without a bond hearing for eight months); *Cabral*, 331 F. Supp. at 261 (noncitizen detained without a bond hearing for seven months); *Sajous*, 2018 WL 2357266, at *3-5 (noncitizen detained without a bond hearing for eight months).

8

Because these "cases stand for the proposition . . . that, 'at some point, detention *without a hearing* offends the Due Process Clause,'" *Arce-Ipanaque*, 2019 WL 2136727, at *1 (emphasis added), Guerrero's reliance on them is unconvincing. Unlike the noncitizens in those cases, however, Guerrero has had two bond hearings during her sixteen months in detention.[6] On October 25, 2018, four months after being detained and one month after her counsel requested a bond hearing, an immigration judge reviewed and denied Guerrero's bond request. Then, on August 29, 2019, two months after Guerrero was granted asylum and one month after her counsel requested bond, Guerrero received another bond hearing, at which time a second immigration judge reviewed and denied her bond request. Although the immigration judges held in the alternative that they lacked jurisdiction to grant bond under § 1226(c), both rulings also reached the merits of the bond determination, holding that Guerrero failed to demonstrate that she was not a danger to the community in light of her recent conviction. *See* Pet. ¶ 27, 29; Gov't Opp. at 5, 6.

Guerrero's circumstances are thus not comparable to those addressed by the cases described above because she has received "some procedural safeguard" against mandatory detention. Therefore, the constitutional principle, as it has been enunciated, has been complied with: detention must come with "adequate procedural protections" because "[t]he Fifth Amendment's Due Process Clause forbids the Government [from] 'depriv[ing]' any 'person . . . of . . . liberty . . . without due process of law.'" *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001); *see also Jennings*, 138 S. Ct. at 862 ("The Due Process Clause foresees eligibility for bail as part of 'due process.'" (Breyer, J., dissenting)). Although Guerrero has indeed been subject to a

---

[6] Guerrero also had a *Joseph* hearing to determine whether she was properly detained pursuant to § 1226(c). *See Matter of Joseph*, 22 I. & N. Dec. 799 (BIA 1999); *see also Hernandez v. Decker*, No. 18-CV-5026 (ALC), 2018 WL 3579108, at *2 n.4 (S.D.N.Y. July 25, 2018) ("Such a hearing, known as a *Joseph* hearing, charges ICE with the initial burden of showing there is a 'reason to believe' that the detained alien is deportable or admissible under a ground listed in Section 1226(c)(1)(A)-(D).").

lengthy detention, that fact in itself is not a due process violation.

Perhaps because her circumstances are distinguishable from the majority of cases granting bond hearings to noncitizens detained pursuant to § 1226(c), Guerrero, in her reply brief, relies heavily on this Court's decision in *Joseph v. Decker*, No. 18-CV-2640 (RA), 2018 WL 6075067 (S.D.N.Y. Nov. 21, 2018). There, Joseph, like Guerrero, had received a bond hearing, at which his request for bond was denied. *Id.* at *3-4. And, as is the case here, an immigration judge later terminated Joseph's removal proceedings yet ordered that he remain detained pending DHS's appeal to the BIA. Joseph filed a habeas petition requesting a subsequent bond hearing, which this Court granted. It held that Joseph's "continued detention without a supplemental bond hearing" was unreasonable because "the fact that [Joseph] has since been found not-removable cannot be ignored." *Id.* at *11-12. Explaining these were "changed circumstances" that must be accounted for, the Court ordered a "supplemental bond hearing taking into account the immigration judge's termination of his removal proceedings." *Id.* at *12.

While there are indeed some similarities to *Joseph* here, Guerrero's case differs in a significant way. Guerrero argues that she too has experienced changed circumstances as a result of her June 2019 asylum grant, which entitles her to a supplemental bond hearing. Unlike in *Joseph*, however, Guerrero received that supplemental hearing following her changed circumstances. On July 31, Guerrero's counsel requested a second bond hearing. A month later, on August 29, that hearing was held and an immigration judge considered whether to grant bond to Guerrero pending DHS's appeal. Thus, before the judge were Guerrero's changed circumstances (the grant of asylum), in addition to the previously cited factors relevant to whether Guerrero presents a danger to the community (her conviction for endangering the welfare of a child). Pet. ¶ 27-29. As such, the rationale in *Joseph* – that there were "changed

10

circumstances" warranting a subsequent bond hearing – is inapplicable here. *Joseph*, 2018 WL 6075067, at *12.

Guerrero's petition also differs from *Vallejo v. Decker*, another decision granting a supplemental bond hearing to a noncitizen detained under § 1226(c). No. 18-CV-5649 (JMF), 2018 WL 3738947 (S.D.N.Y. Aug. 7, 2018). There, the noncitizen was denied bond in December 2016, but then detained for another 17 months without a subsequent review of his detention. The court determined that Vallejo's "circumstances ha[d] changed materially and significantly" since his first bond hearing, and required the government to provide another hearing. *Id.* at *5. This reasoning also has no application to Guerrero's case. Guerrero's detention was reviewed approximately two months ago, and the Court cannot – at least at this moment – say that Guerrero has undergone a substantial time in detention without review, as was true in *Vallejo*.[7]

Consequently, Guerrero's detention, albeit lengthy, has comported with due process. She has received the requisite individualized review, including after her changed circumstances in June 2019. For this reason, the Court need not engage in the factor-based analysis which has been used to "assess[] when detention in the *absence of a bond hearing* violates procedural due process." *Joseph*, 2018 WL 6075067, at *10 (emphasis added).

Finally, to the extent that Guerrero challenges the fact that the burden of proof was on her rather than the Government at her two prior hearings, the Court is not persuaded. *See* Pet.'s

---

[7] Guerrero's case also differs from *Hernandez v. Decker*, where the court granted a bond hearing to a noncitizen detained pursuant to § 1226(c) who previously had a bond hearing. 2018 WL 3579108, at *2-3. *Hernandez* is distinguishable because the immigration judge did not reach the merits of Hernandez's bond request at the first hearing, instead "finding him properly detained on the basis of his convictions and thus statutorily ineligible for bond." *Id.*, at *3; *see also Campbell v. Barr*, 387 F. Supp. 3d 286, 292 (W.D.N.Y. 2019) (granting a bond hearing because, at the noncitizen's first hearing, the immigration judge only "determined that he 'lack[ed] jurisdiction to redetermine custody due to the entry of entry of a final administrative order of removal'").

11

Reply at 5-6. The Court has not found any case placing the burden of proof in a § 1226(c) bond hearing on the government when the noncitizen's period of detention remained reasonable even without review. Rather, courts – including this Court – have shifted the burden onto the government only *after* finding that the noncitizen's due process rights were violated as a result of unreasonably prolonged detention without a bond hearing. As this Court has explained, placing "the burden on the government to demonstrate detention's necessity by clear and convincing evidence was *necessary to rectify the ongoing violation* of [the noncitizen's] procedural due process rights." *Joseph*, 2018 WL 6075067, at *12 (emphasis added); *see also Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018) (explaining that courts generally have shifted the burden in § 1226(c) bond hearings onto the government when the "petition seeks to compel a bond hearing where there has been none"); *Arce-Ipanaque*, 2019 WL 2136727, at *3 (reaching this "procedural issue[]" after determining that "Arce-Ipanaque is constitutionally entitled to an individualized bond hearing"). Perhaps for that reason, Guerrero's petition relies on cases involving bond hearings provided for noncitizens detained under § 1226(a), at which "[i]t is the Government's burden to justify the detention of an immigrant at a bond hearing." *Velasco Lopez v. Decker*, No. 19-CV-2912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019). However, these cases are inapplicable here because § 1226(a) is a discretionary detention statute distinct from § 1226(c)'s mandatory detention provision. *See Martinez v. Decker*, No. 18-CV-6527 (JMF), 2018 WL 5023946, at *4-5 (S.D.N.Y. Oct. 17, 2018) (explaining that § 1226(a) and § 1226(c) differ in this context because "Section 1226(c) concerns criminal aliens who are presumptively unbailable"); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation . . . varies with circumstances.").[10]

---

[10] Guerrero also argues that she is automatically entitled to a bond hearing because her detention

12

## CONCLUSION

The Court is sympathetic to the fact that Guerrero has been detained for sixteen months even though she has now been granted asylum. Nonetheless, she has not been deprived due process. Guerrero has had two bond hearings – one held four months after she was first detained, and the other two months after her asylum grant. At these hearings, two different immigration judges reviewed her detention and determined she poses a danger to the community – decisions this Court does not have jurisdiction to review. *See Arevalo-Guasco v. Dubois*, No. 18-CV-2184, 2019 WL 4419380, at *2 (2d Cir. Sept. 17, 2019) (explaining that 8 U.S.C. § 1226(e) "precludes judicial review of the IJ's weighing of evidence and factual findings regarding whether [a detained noncitizen] is a danger to the community"); *Mugiraneza v. Whitaker*, No. 19-CV-6140 (MAT), 2019 WL 2395316, at *4 (W.D.N.Y. June 6, 2019) ("District courts siting in habeas review . . . have no jurisdiction to review an IJ's discretionary decision denying bond."). Accordingly, the Court cannot say that Guerrero's current detention has "crosse[d] the line of constitutional concern." *Arce-Ipanaque*, 2019 WL 2136727, at *1.

For the foregoing reasons, the Court denies Guerrero's petition without prejudice. In the event that Guerrero later requests leave to refile her petition on due process grounds, she shall file a letter to the Court explaining the relevant changed circumstances.

SO ORDERED.

Dated: November 1, 2019
New York, New York

Ronnie Abrams
United States District Judge

---

has exceeded six months. Pet. ¶ 44. As Guerrero acknowledges, however, courts in this district have resoundingly rejected this argument. Pet.'s Reply at 4 n.4; *see, e.g.*, *Cabral*, 331 F. Supp. 3d 255, 260 (S.D.N.Y. 2018) ("The Court cannot adopt the six-month rule proposed by the petitioner. The Supreme Court rejected a six-month rule as a matter of statutory construction in *Jennings*.").

13